Approved: _____
          Danielle Kudla
          Alexander Li
          Assistant United States Attorneys

Before:   HONORABLE BARBARA MOSES
          United States Magistrate Judge          21 MAG 2851
          Southern District of New York

- - - - - - - - - - - - - - - - - x
                                  :    **COMPLAINT**
UNITED STATES OF AMERICA          :
                                  :    Violations of
        - v. -                    :    21 U.S.C. §§ 963 and
                                  :    846; and 18 U.S.C.
ADRIANO RODRIGUEZ-DIAZ,           :    §§ 924(c) and 2
IRONELLYS PAULINO-NOLASCO, and    :
ROBERT NUNEZ,                     :    COUNTY OF OFFENSE:
                                  :    BRONX
                 Defendants.      :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

       DREW GREELEY, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") and charges as follows:

### COUNT ONE
### (Cocaine Importation Conspiracy)

       1.   In or about March 2021, in the Southern District of New York and elsewhere, ADRIANO RODRIGUEZ-DIAZ, IRONELLYS PAULINO-NOLASCO, and ROBERT NUNEZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree, together and with each other, to violate the narcotics laws of the United States.

       2.   It was a part and an object of the conspiracy that ADRIANO RODRIGUEZ-DIAZ, IRONELLYS PAULINO-NOLASCO, and ROBERT NUNEZ, the defendants, and others known and unknown, would and did import into the United States and into the customs territory of the United States from a place outside thereof a controlled

substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

3. The controlled substance that ADRIANO RODRIGUEZ-DIAZ, IRONELLYS PAULINO-NOLASCO, and ROBERT NUNEZ, the defendants, conspired to import into the United States and into the customs territory of the United States from a place outside thereof, was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 960(a)(1) and (b)(1)(B).

(Title 21, United States Code, Section 963.)

## COUNT TWO
### (Narcotics Conspiracy)

4. In or about March 2021, in the Southern District of New York and elsewhere, ADRIANO RODRIGUEZ-DIAZ, IRONELLYS PAULINO-NOLASCO, and ROBERT NUNEZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree, together and with each other, to violate the narcotics laws of the United States.

5. It was a part and an object of the conspiracy that ADRIANO RODRIGUEZ-DIAZ, IRONELLYS PAULINO-NOLASCO, and ROBERT NUNEZ, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

6. The controlled substance that ADRIANO RODRIGUEZ-DIAZ, IRONELLYS PAULINO-NOLASCO, and ROBERT NUNEZ, the defendants, conspired to distribute and possess with intent to distribute was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

## COUNT THREE
### (Firearms Use, Carrying, and Possession)

7. In or about March 2021, in the Southern District of New York and elsewhere, ADRIANO RODRIGUEZ-DIAZ, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the cocaine importation conspiracy charged in Count One and the

narcotics conspiracy charged in Count Two of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did knowingly possess a firearm, and did aid and abet the same.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

8.  I am a Special Agent with the DEA and I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal observations, my conversations with law enforcement agents and other individuals, as well as my examination of documents, reports, and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.  Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

9.  Based on my participation in this investigation, including my personal observations; my review of documents, records, photographs, and videos; my examination of physical evidence; my participation in physical surveillance; and my discussions with other law enforcement officers, witnesses, and other individuals, I know the following, in substance and in part:

a.  Since in or about late 2020, the DEA has been investigating the importation and distribution of narcotics through a produce warehouse called "Sweet Produce," which is located in Jersey City, New Jersey (the "Warehouse").

<u>The March 10, 2021 Seizure of
21 Kilograms of Cocaine and $1.3 Million in Cash</u>

b.  Based on my review of pole camera footage of the exterior of the Warehouse, I know that on or about March 9, 2021, a man, identified upon his arrest as ADRIANO RODRIGUEZ-DIAZ, the defendant, carried a dark-colored, large bag (the "Large Bag") from an office at the Warehouse, across an outdoor parking lot, and into another area of the Warehouse.

c. Based on my review of pole camera footage of the exterior of the Warehouse, I know that later that same day, March 9, 2021, a particular white Honda Accord (the "Accord") arrived at the Warehouse. The Accord parked inside the Warehouse. For the reasons that follow, I believe that the Large Bag that RODRIGUEZ-DIAZ was carrying contained cocaine, and that RODRIGUEZ-DIAZ placed the Large Bag inside the Accord for distribution by IRONELLYS PAULINO-NOLASCO and ROBERT NUNEZ, the defendants.

d. On or about March 10, 2021 — *i.e.*, the next day — the following events occurred:

i. At approximately 5:05 p.m., law enforcement agents conducting surveillance outside the Warehouse observed the Accord drive away from the Warehouse by a woman, identified upon her arrest as PAULINO-NOLASCO.

ii. At approximately 7:25 p.m., law enforcement agents observed the Accord park in the vicinity of a residential building in Bronx, New York (the "Bronx Building"). PAULINO-NOLASCO exited the Accord and entered the Bronx Building. A law enforcement officer followed PAULINO-NOLASCO into the Bronx Building and saw PAULINO-NOLASCO enter a particular apartment (the "Bronx Residence").

iii. At approximately 7:50 p.m., law enforcement agents observed PAULINO-NOLASCO exit the Bronx Building with an individual identified upon his arrest as NUNEZ. PAULINO-NOLASCO and NUNEZ entered a particular Cadillac Escalade (the "Escalade"), which was parked in the vicinity of the Bronx Building, with NUNEZ going inside the driver's side door. The Escalade drove away for approximately 50 minutes and then returned to the vicinity of the Bronx Building.

iv. At approximately 8:40 p.m., law enforcement agents observed NUNEZ double-park the Escalade next to the Accord in the vicinity of the Bronx Building. Law enforcement agents then observed PAULINO-NOLASCO exit the Escalade and enter the Accord, turn on the ignition of the Accord, exit the driver's seat, and then proceed to retrieve a large dark-colored, weighted bag — which appeared to be the same Large Bag that RODRIGUEZ-DIAZ carried inside the Warehouse the preceding day — from the rear passenger area of the Accord. PAULINO-NOLASCO then entered the Escalade with the Large Bag. Shortly thereafter, NUNEZ parked the Escalade in the vicinity of the Bronx Building in front of a fire hydrant. PAULINO-NOLASCO exited the Escalade and re-entered the

Bronx Building.  NUNEZ followed moments later, carrying the Large Bag.

v. At approximately 9:30 p.m., PAULINO-NOLASCO, carrying a tote bag, and NUNEZ, carrying a white plastic bag (the "White Bag"), exited the Bronx Building.  PAULINO-NOLASCO and NUNEZ then parted ways, with PAULINO-NOLASCO driving off in the Accord, and NUNEZ driving off in the Escalade.  Law enforcement followed the Escalade.

vi. At approximately 9:40 p.m., law enforcement agents stopped the Escalade in Manhattan, New York.  A law enforcement officer opened the passenger door to see into the Escalade due to the tinted nature of the vehicle windows.  The officer saw the White Bag on the front passenger seat floor, which appeared to contain apples.  Inside the White Bag, a smaller black bag (the "Black Bag") protruded out beneath the apples.

vii. Law enforcement agents searched the Escalade based on probable cause that NUNEZ possessed a controlled substance.  Inside the Black Bag, law enforcement agents found approximately 14 hard-cased hollow cylinders (the "Cylinders") packaged inside blue carbon paper with gold or yellow writing.  Law enforcement agents later opened one of the Cylinders and found a powdery white substance that field-tested for the presence of cocaine.  In total, the Cylinders in the Escalade weighed approximately one kilogram.  A photograph of the Cylinders is below:



viii. Law enforcement agents arrested and subsequently released NUNEZ. On his person, law enforcement agents found a driver's license bearing the name "Robert Nunez."

e. On or about March 11, 2021, law enforcement agents conducted a judicially-authorized search of the Bronx Residence. Inside the Bronx Residence, law enforcement agents found the Large Bag, a large quantity of additional Cylinders similar to those found in the Escalade, and additional packages of narcotics. Like the Cylinders inside the Escalade, the Cylinders inside the Bronx Residence were packaged inside blue carbon paper with gold or yellow writing, and they also appear to contain cocaine. In total, the narcotics inside the Bronx Residence weighed approximately 20 kilograms.

f. Law enforcement agents also recovered approximately $1.3 million in United States currency that was bundled and banded inside the Bronx Residence. Based on the manner in which the cash was bundled and banded, and the proximity of the cash to a large quantity of narcotics, I believe that the cash found inside the Bronx Residence is proceeds of narcotics trafficking. Photographs of some of the cash and Cylinders found inside the Bronx Residence are below:





<u>The March 12, 2021 Seizure of</u>
<u>101 Kilograms of Cocaine and a Firearm</u>

   g. Based upon my review of United States Customs and Border Protection records, I know that on or about February 16, 2021, a shipping container was shipped from a particular company ("Vendor-1") in the Dominican Republic to the United States. The vessel bearing the container arrived at the Port Newark Container Terminal on or about February 26, 2021, and was released on or about February 28, 2021.

   h. Based on my review of pole camera footage of the exterior of the Warehouse, I know that on or about March 11, 2021, at approximately 11:33 a.m., a shipping container truck arrived at the Warehouse. The shipping container truck drove inside the Warehouse, presumably to unload, and then left the Warehouse at approximately 12:21 p.m. Thereafter, the Warehouse was locked by employees and closed for the remaining portion of the day, which is inconsistent with the Warehouse's normal operating procedures as observed by law enforcement over the past several weeks.

   i. Based on my review of pole camera footage of the exterior of the Warehouse, I know that on or about March 12, 2021, a particular Chevrolet Impala (the "Impala") arrived at the

7

Warehouse in the early morning hours, well before the Warehouse typically opens for business as observed by law enforcement over the past few weeks. Based on my review of government records, I know that the Impala is registered to ADRIANO RODRIGUEZ-DIAZ, the defendant, at a particular residence in Ridgefield, New Jersey (the "Ridgefield Residence").

j. Shortly after the arrival of the Impala, a particular delivery van (the "Produce Van") arrived at the Warehouse and parked inside a garage of the Warehouse. The garage door closed. A few minutes later, the garage door opened, and the Produce Van exited the Warehouse. Law enforcement followed the Produce Van and stopped the vehicle, which had a broken driver's side mirror and a license plate with an expired registration, a short distance away from the Warehouse. The driver of the Produce Van (the "Driver"), who was the sole occupant of the vehicle, gave consent to search the Produce Van.

k. Law enforcement then searched the Produce Van and recovered multiple cardboard boxes filled with what appears, based upon the inspecting agents' training and experience, to be brick-shaped packages of cocaine. Like the Cylinders in the Escalade and in the Bronx Residence, the cocaine inside the Produce Van was wrapped in blue carbon paper with gold or yellow writing. The cardboard boxes containing the cocaine were marked with the name of Vendor-1, which, as set forth above, had recently sent a shipment from the Dominican Republic to the Port Newark Container Terminal.

l. In total, the cocaine inside the Produce Van weighed approximately 100 kilograms. A photograph of some of the cocaine is below:



   m. Following the seizure, a Spanish-speaking law enforcement advised the Driver of his *Miranda* rights in Spanish, which is the Driver's native language.  The Driver waived his *Miranda* rights and agreed to speak with law enforcement.  In a field interview conducted in Spanish, the Driver stated, in substance and in part, that RODRIGUEZ-DIAZ had instructed the Driver to pick up boxes at the Warehouse and deliver the boxes to a "cigar bar."  The Driver advised law enforcement that the address for the cigar bar was on his cellphone GPS, which was open and visible inside the Produce Van.  The address listed on the cellphone GPS was the address of a particular cigar bar located in Newark, New Jersey (the "Cigar Bar").

   n. Later that day, on or about March 12, 2021, law enforcement agents conducted a judicially-authorized search of

a basement attached to the Cigar Bar. Inside the basement, law enforcement agents found approximately one kilogram of a substance that appears, based on the inspecting agent's training and experience, to be cocaine. Also inside the basement were a cocaine press, cutting utensils, and packaging materials that are, based on my training and experience, used to subdivide and package narcotics for further distribution.

o. At around the same time that the Produce Van exited the Warehouse, the Impala also left the Warehouse. Law enforcement agents followed the Impala and, a short time later, stopped the vehicle. The occupants of the Impala were the driver, RODRIGUEZ-DIAZ, and a passenger ("Individual-1"). Law enforcement agents arrested RODRIGUEZ-DIAZ. On his person, law enforcement agents found a Dominican Republic driver's license bearing the name "Adriano Rodriguez-Diaz."

p. Later that day, on or about March 12, 2021, law enforcement agents conducted a judicially-authorized search of the Warehouse. Up until the search, law enforcement agents maintained physical surveillance of the Warehouse throughout the day. Other than the Impala and the Produce Van, no vehicles or persons entered or exited the Warehouse. No one was inside the Warehouse at the time of the search.

q. Inside the Warehouse, law enforcement agents found a silver handgun. The handgun was located inside a small bag in a small office closet. The office was in a partitioned-off space in the loading area from which the Produce Van had exited the Warehouse earlier in the day. Based on the physical proximity of the handgun to the loading area, the presence of RODRIGUEZ-DIAZ when the Produce Van was loaded with 100 kilograms of cocaine, and RODRIGUEZ-DIAZ's handling of the Large Bag by which PAULINO-NOLASCO transferred cocaine to NUNEZ at the Bronx Residence, I believe that RODRIGUEZ-DIAZ kept the handgun during and in furtherance of his narcotics importation and distribution enterprise.

r. On or about March 12, 2021, law enforcement agents arrested PAULINO-NOLASCO at the Ridgefield Residence. On her person, law enforcement agents found a driver's license bearing the name "Ironellys Paulino-Nolasco."

WHEREFORE, deponent respectfully requests that a warrant issue for the arrest of ROBERT NUNEZ, the defendant, and that ADRIANO RODRIGUEZ-DIAZ, IRONELLYS PAULINO-NOLASCO, and ROBERT

NUNEZ, the defendants, be imprisoned or bailed, as the case may be.

                                              s/ Drew Greeley by the Court with permission
                                        _____
                                         DREW GREELEY
                                         Special Agent
                                         Drug Enforcement Administration

Sworn to me through the transmission of this Complaint by reliable electronic means, pursuant to Federal Rule of Criminal Procedure 4.1, this 14th day of March, 2021

_____
THE HONORABLE BARBARA MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK